**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | **NO.  18-576-5** |
| | : | |
| **VONTEZ SCALES** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                              **March 28, 2024**

Our jury convicted Vontez Scales for conspiring to distribute methamphetamine, cocaine, and heroin and possession with intent to distribute a detectable amount of heroin and fentanyl, but not cocaine after a state court had convicted him of drug offenses years earlier. He then fired his privately retained trial lawyer. We appointed counsel for post-verdict motions. We sentenced him as a career offender. He appealed and obtained a partial remand to recalculate his sentence after an intervening change in law. He fired the Criminal Justice Act lawyer and hired another private counsel. We resentenced him as a career offender but granted his third lawyer's motion for variance. He appealed the resentencing and lost. Our Court of Appeals affirmed our sentence based on Mr. Scales's career offender status. Mr. Scales now pro se seeks a writ of *audita querela* under the All Writs Act and petitions for habeas relief. He claims his earlier state court convictions can no longer be predicate crimes when defining career offender status. His arguments are well presented but not persuasive under the Law. He also claims all three of his lawyers provided constitutionally ineffective assistance of counsel based on his understanding of career offender status and the state court convictions. We cannot find any of his lawyers provided constitutionally ineffective assistance as the challenge relates to the legal merits of their arguments and his contrary view of the Law. We find no basis for an evidentiary hearing or a certificate of appealability on the habeas request. We deny his joint motion for a writ or habeas relief.

## I.   Background

Vontez Scales pleaded guilty in the Delaware County Court of Common Pleas in May 2011 to the manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance (cocaine base), and the manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance (heroin, marijuana, and cocaine base).[1] His conviction did not stop his drug dealing.

Our grand jury in March 2019 charged Mr. Scales and seven co-conspirators with conspiracy to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, 500 grams or more of a mixture and substance containing a detectable amount of cocaine, and 100 grams or more of a mixture and substance containing a detectable amount of heroin and possession with intent to distribute a mixture and substance containing both a detectable amount of heroin and fentanyl, and a mixture and substance containing a detectable amount of cocaine.[2]

The United States filed an Information charging the state offenses on November 25, 2019 notifying us Mr. Scales had two state court convictions of felony drug trafficking offenses in violation of Pennsylvania law and defined by Congress as serious drug felonies.[3]

***Our jury convicted Mr. Scales on drug charges.***

Trial began with privately retained counsel Eugene Tinari representing Mr. Scales. Mr. Scales and his attorney Mr. Tinari signed a stipulation on the first day of trial conceding the Delaware County Court of Common Pleas sentenced Mr. Scales on May 9, 2011 on his conviction of a serious drug offense as defined by Congress and in violation of Pennsylvania law for which he served a term of imprisonment of more than twelve months and released within fifteen years of commencement of the offense charged in the second superseding indictment.[4]

The jury convicted Mr. Scales of conspiracy to distribute methamphetamine, cocaine, and heroin and possession with intent to distribute a detectable amount of heroin and fentanyl, but not cocaine.[5] Attorney Tinari moved for judgment of acquittal or, alternatively, for a new trial on behalf of Mr. Scales.[6] Two weeks later, Mr. Scales pro se moved for leave to proceed in forma pauperis on appeal (without having filed an appeal) and requested appointment of counsel from the Criminal Justice Act panel to represent him in further proceedings.[7] We excused Attorney Tinari following a status hearing from further representation and appointed new counsel for Mr. Scales from the Panel.[8] Mr. Scales then advised he and his family decided to hire private counsel.[9] We then excused Panel counsel following a status hearing and attorney Evan Hughes entered his appearance for Mr. Scales.[10] We allowed Attorney Hughes more time to move for post-verdict relief.[11]

Attorney Hughes timely moved for judgment of acquittal or, alternatively, a new trial.[12] Attorney Hughes argued conviction on the conspiracy and possession with intent to deliver charges is against the weight of the evidence; the jury's finding of 500 or more grams of methamphetamine is against the weight of the evidence; and Attorney Tinari rendered ineffective assistance of counsel at trial requiring we grant his motion for acquittal or grant him a new trial.[13] We denied the motion for acquittal and for a new trial, explaining we found no basis to vacate the jury's verdict and found sufficient evidence supported Mr. Scales's conviction.[14] We also denied Mr. Scales's ineffective assistance of counsel claim, allowing him to bring it in a collateral proceeding.[15]

We sentenced Mr. Scales on August 4, 2020 to a term of 320-months' imprisonment as a career offender under section 4.B1.1 of the Sentencing Guidelines, a ten-year term of supervised release, and imposed a $200 assessment.[16] We calculated Mr. Scales's Guidelines based on his

conviction on predicate crimes of conspiracy to distribute controlled substances (Count I) and his conviction on possession with intent to distribute heroin and fentanyl (Count VII). At the time of his August 4, 2020 sentencing, Mr. Scales had a base offense level of 30 with a 7-point enhancement as a career offender resulting in a total offense level of 37 and a criminal history Category VI as a career offender under U.S.S.G. § 4.B1.1(b) resulting in a Guidelines range of 360 months to life. [17]

### Mr. Scales appealed in August 2020.

Attorney Hughes timely appealed from the judgment in August 2020.[18] Mr. Scales challenged the sufficiency of the evidence supporting his conviction the admission of certain opinion testimony by the case agent, and argued his sentence is tainted by the treatment of an inchoate offense as a controlled substance offense and career offender predicate. At the time of Mr. Scales's appeal, our Court of Appeals had already heard argument en banc in *United States v. Nasir.* Our Court of Appeals issued its decision in *Nasir* on December 1, 2020.[19]

Our Court of Appeals affirmed Mr. Scales's conviction on August 30, 2021 but vacated his sentence and remanded the matter for resentencing to permit us to consider *Nasir*.[20] The United States agreed on remand for our reconsideration of the sentence in light of *Nasir*, recognizing Mr. Scales's conspiracy conviction as charged in the indictment no longer qualified as a career offender predicate and the career offender offense level would be lower.

### We resentenced Mr. Scales in November 2021.

We resentenced Mr. Scales on November 29, 2021.[21] Attorney Cheryl Sturm now represented Mr. Scales at resentencing. The presentence report noted the two earlier adult criminal convictions in the Delaware County Court of Common Pleas.[22] The Probation Office deemed Mr.

Scales a career offender based on his two 2011 felony convictions for controlled substance offenses in Delaware County.

Attorney Sturm objected, including arguing Mr. Scales's state court convictions are not categorically controlled substance offenses because they include attempts to distribute and are inchoate offenses under *Nasir*.[23] Attorney Sturm again challenged Mr. Scales's state court convictions as inchoate offenses, challenged the Probation Officer's determination Mr. Scales is a career offender, and challenged the information necessary to identify the amount of methamphetamine in Mr. Scales's possession in the second superseding indictment.[24]

The Probation Officer re-calculated Mr. Scales's Sentencing Guidelines calculation based on *Nasir*.[25] The Probation Officer calculated Mr. Scales's base offense level at 30 after combining the drug weights for methamphetamine, fentanyl, and heroin.[26] At the time of his conviction under 21 U.S.C. §§ 841(a),(b)(1)(C), Mr. Scales was over the age of eighteen; the offense of conviction is a controlled substance offense; and Mr. Scales had two prior convictions for controlled substance offenses in Delaware County making him a career offender. The Probation Officer applied a career offender enhancement under section 4B1.1 of the Sentencing Guidelines for a total offense level of 34.[27] Mr. Scales's earlier criminal convictions resulted in a criminal history score of 6.[28] The Probation Officer added 2 points to his criminal history score because he committed the federal offense while under supervision for his earlier Delaware County convictions resulting in a total criminal history score of 8.[29] A criminal history score of 8 put Mr. Scales in criminal history Category V but his career offender designation put him in criminal history Category VI.[30]

A criminal history Category VI and total offense level of 34 put Mr. Scales in a Guidelines range of 262 to 327 months.[31] The United States asked we impose a Guidelines sentence of incarceration.[32]

Attorney Sturm moved for a variance from the Guidelines, seeking a downward variance of 240-months.[33] We granted Mr. Scales's Motion for a variance and imposed a lower sentence of 240-months' imprisonment.[34]

### Mr. Scales appealed from the resentence.

Mr. Scales, through Attorney Sturm, appealed from his resentencing raising three challenges: (1) we should not have considered his 2011 Delaware County drug convictions because the United States did not accurately document a conviction for cocaine trafficking; (2) the earlier drug convictions are inchoate crimes under Pennsylvania law and *Nasir* dictates those convictions cannot count toward career offender status; and (3) we should not have sentenced him for his methamphetamine conviction because the United States did not seize it and instead presented at trial a photo of two baggies containing a substance a detective testified looked like methamphetamine, constituting error because the United States is required to prove the drug is "marketable and consumable."[35]

Our Court of Appeals rejected Mr. Scales's arguments. First, the court affirmed the United States demonstrated Mr. Scales's earlier convictions for cocaine trafficking.[36] Mr. Scales argued his plea agreement in one of his earlier state-controlled substance offenses is limited to heroin and marijuana trafficking, not cocaine trafficking. Our Court of Appeals rejected this argument, noting elsewhere in the plea agreement for his state controlled substance offenses, Mr. Scales signed and initialed an agreement pleading guilty to cocaine trafficking as the state court judgment showed.[37] And our Court of Appeals concluded even without the cocaine trafficking, a conviction for heroin and marijuana trafficking would still make Mr. Scales a career offender under section 4B1.2(b) of the Guidelines.[38]

Second, our Court of Appeals rejected Mr. Scales's argument his earlier state court convictions cannot make him a career offender under *Nasir* because his convictions for violations of section 780-113(a)(30) of title 35 of the Pennsylvania statutes include inchoate crimes.[39] Our Court of Appeals rejected this argument, explaining it "thoroughly examined" section 780-113(a)(30) in the context of the Guidelines and found it "does not criminalize any inchoate offenses" and the statute "remains a career offender predicate" even after *Nasir*.[40]

Our Court of Appeals lastly rejected Mr. Scales's argument he should not have been sentenced for his methamphetamine conviction because the United States never seized methamphetamine and we improperly admitted at trial a detective's testimony a photo of two baggies contained a substance which looked like methamphetamine.[41] The court explained it already determined we properly admitted testimony regarding methamphetamine trafficking in Mr. Scales's first appeal, even without such testimony there is "plenty of evidence" Mr. Scales took part in a methamphetamine trafficking conspiracy, Mr. Scales's argument is an attack on his conviction which should be been raised at trial and in his first appeal, and the court rejected the "marketable and consumable" argument regarding the definition of a "mixture" of drugs.[42] Our Court of Appeals concluded Mr. Scales's two 2011 Delaware County drug felonies made him a career offender under the Guidelines and affirmed our November 2021 sentence.[43] Mr. Scales petitioned for certiorari to the United States Supreme Court. The Court denied the petition on March 6, 2023.[44]

## II.   Analysis

Mr. Scales now pro se petitions for habeas relief and to vacate his conviction and sentence under the All Writs Act.[45] The United States opposes Mr. Scales's petition.[46]

Mr. Scales characterizes his pro se petition as a "combination motion" under both the habeas statute and the All Writs Act. He asks us to vacate his conviction and sentence for two main reasons. First, he challenges yet again our determination of his career offender status under the Sentencing Guidelines. Second, he asserts ineffective assistance of trial and appellate counsel. The United States responds there is no basis for relief under the All Writs Act and his trial counsel and appellate counsel were effective. We agree with the United States and will deny Mr. Scales's motion.

### A. Mr. Scales is not entitled to the extraordinary relief of *audita querela* under the All Writs Act.

Mr. Scales directly appealed from his resentencing where we found his two 2011 drug convictions in Delaware County made him a career offender under the Sentencing Guidelines. Our Court of Appeals rejected Mr. Scales's challenge to our career offender designation under the Guidelines. Mr. Scales returns to again challenge his designation as a career offender. He concedes he may not raise a challenge to a career offender designation through a habeas petition.[47] Mr. Scales instead seeks relief through a writ of *audita querela* under the All Writs Act. [48]

A writ of *audita querela* at common law permits a defendant "to obtain relief against a judgment or execution because of some defense … arising subsequent to the rendition of the judgment."[49] The writ is available in criminal cases "only to the extent that it fills in gaps in the current system of post-conviction relief."[50] The writ is an extraordinary remedy and the "gaps" it is intended to fill "are exceedingly rare."[51] As of its 2019 decision in *United States v. Potts*, our Court of Appeals "ha[s] yet to find a gap in the federal post-conviction framework that needed to be filled with a writ of *audita querela*."[52]

There is no "gap" to be filled here. Mr. Scales already directly appealed the career offender determination. Our Court of Appeals rejected the same argument Mr. Scales makes now, found

his two 2011 Delaware County drug felonies made him a career offender under the Guidelines, and affirmed our November 2021 resentencing.[53] A writ of *audita querela* is not a vehicle by which Mr. Scales can again challenge our career offender determination he already challenged, and lost, on direct appeal in our Court of Appeals.

> **B.  Even if we considered Mr. Scales's motion, his challenge to the career offender determination fails on the merits.**

Mr. Scales argues he is not a career offender under section 4B1.1 of the Guidelines for two reasons: (1) neither of his Delaware County offenses qualify as predicates for a career offender determination under *Nasir*; and (2)  a 2015 amendment to the federal controlled substances table removed ioflupane—a cocaine derivative—from the definition of cocaine while the Pennsylvania controlled substances statute did not remove ioflupane from the definition of cocaine, making Pennsylvania's law broader than its federal counterpart and thus not a predicate for a career offender determination. We reject Mr. Scales's arguments.

> **1.  *Nasir* does not change our analysis of Mr. Scales's career offender designation under the Guidelines.**

A defendant is a "career offender" under section 4B1.1 of the Sentencing Guidelines if he: "(1)  … was at least eighteen years old at the time [he] committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."[54] A defendant's offense level is increased if he is designated a career offender and his criminal history category "shall be" Category VI.[55]

In *Nasir*, the defendant challenged his career offense designation arguing one of his two earlier convictions in state court—attempt to possess with intent to distribute cocaine—is an inchoate offense and cannot qualify as a "controlled substance offense" under section 4B1.1.[56]

Our Court of Appeals agreed with Mr. Nasir, held inchoate crimes are not included in the definition of "controlled substance offenses" under section 4B1.2(b) of the Sentencing Guidelines, and Mr. Nasir is entitled to be resentenced without the career offender designation.[57]

We reject Mr. Scales's challenges to his Delaware County convictions as predicates for a career offender designation. Our Court of Appeals rejected this argument in Mr. Scales's second appeal, explaining Pennsylvania's statute does ***not*** criminalize any inchoate offenses and Pennsylvania's statute remains, even after *Nasir*, a career offender predicate.[58] We dismiss Mr. Scales's challenge.

> ### 2.  Our Court of Appeals's decision in *United States v. Brown* does not change Mr. Scales's career offender designation.

Mr. Scales next argues he is not a career offender because two appellate cases from 2022 "may" change his designation as a career offender under section 4B1.1 of the Guidelines, our Court of Appeals's decision in *United States v. Brown*, and a decision from the United States Court of Appeals for the Eleventh Circuit in *United States v. Jackson*.[59] The United States Supreme Court granted certiorari in both *Brown* and *Jackson* in 2023.[60] Neither of the courts' analyses in *Brown* or *Jackson* help Mr. Scales's argument and we decline to accept Mr. Scales's prediction the Supreme Court will vacate *Brown* or *Jackson* in favor of his argument.

We focus on our Court of Appeals's decision in *Brown*. Mr. Scales contends *Brown* supports the merits of his challenge to his conviction through a writ of *audita querela* and also forms the basis of his ineffective assistance of counsel claims.[61]

Mr. Brown appealed from his mandatory minimum sentence under the Armed Career Criminal Act ("ACCA") arguing his earlier Pennsylvania marijuana convictions may no longer be predicate offenses after the federal decriminalization of hemp. The grand jury indicted Mr. Brown on multiple charges in 2016, including felon in possession of a firearm and cocaine possession and

distribution.[62] Mr. Brown pleaded guilty in 2019 to cocaine possession and distribution and the felon in possession of a firearm offenses. Judge Rambo sentenced Mr. Brown in 2021.

At the time of his sentencing, Mr. Brown had five earlier Pennsylvania convictions for controlled substances offenses, including one conviction for distribution or possession with intent to distribute cocaine in 2008 and four convictions for distribution or possession with intent to distribute marijuana between 2009 and 2014. Mr. Brown's earlier Pennsylvania convictions led Judge Rambo to impose a fifteen-year mandatory minimum sentence under ACCA.[63] Judge Rambo did not decide whether Mr. Brown qualified as a career offender under section 4B1.1 of the Sentencing Guidelines because she already determined the applicability of ACCA.[64]

Mr. Brown appealed. He argued his earlier Pennsylvania marijuana convictions between 2009 and 2014 may not count as ACCA predicates because the elements of section 780-113(30) are not a "categorical match" to a federal statute decriminalizing hemp in 2018.[65] He argued Pennsylvania's definition of marijuana as a Schedule I controlled substance is broader than federal law as amended in 2018. At the time Mr. Brown pleaded guilty to the federal charges and at the time of his sentence, the federal definition of marijuana excluded hemp from the definition of marijuana.[66] But the old definition of marijuana applied when he committed his felon in possession offense in 2016 and when he committed, and pleaded guilty to, his state law offenses between 2009 and 2014.[67]

Our Court of Appeals considered the "timing question" of when to determine whether an earlier conviction constitutes a "serious drug offense" under ACCA.[68] Our Court of Appeals held we must look at the federal schedule at the time Mr. Brown committed the federal *offense*, rejecting Mr. Brown's argument we must look to the federal schedule at the time of federal sentencing.[69] Applying this approach, our Court of Appeals found at the time Mr. Brown

committed the federal offenses in 2016, the federal definition of marijuana categorically matched the Pennsylvania definition and affirmed the application of ACCA's enhanced penalties.[70]

Although not entirely clear, Mr. Scales seems to argue *Brown* and the superseded *Jackson* decision require us to find his two 2011 Delaware County convictions cannot be predicate offenses for a career offender enhancement under section 4B1.1 of the Guidelines. He argues at the time of his federal controlled substances offenses in 2018, the United States Drug Enforcement Administration had, in 2015, removed "[123I]ioflupane" from the schedules of the Controlled Substances Act.[71] He argues his state convictions cannot count toward a career offender designation under section 4B1.1 of the Guidelines and we must vacate his sentence. This is so, argues Mr. Scales, because at the time of the commission of his federal offense in 2018, ioflupane had three years earlier been removed from the federal controlled substances schedule, did not match the Pennsylvania statute, and cannot be a "controlled substance offense" to count toward a career offender enhancement under Section 4B1.1 of the Guidelines.[72] We reject this argument because *Brown* is distinguishable as recently explained by our Court of Appeals in *United States v. Lewis*.[73]

In *Lewis*, our Court of Appeals addressed whether an earlier state law conviction for possession with the intent to distribute marijuana under New Jersey law is a "controlled substance offense" under the Guidelines and when the substance must be regulated by state law for a Guidelines enhancement to apply.[74]

Mr. Lewis pleaded guilty in 2020 to being a felon in possession of a firearm. Mr. Lewis would have received an increase to his offense level if he had an earlier "controlled substance offense" as defined by the Guidelines. The Probation Office applied an enhancement because at the time of Mr. Lewis's sentencing, he had a 2012 New Jersey conviction for possession with

intent to distribute marijuana. Mr. Lewis challenged the enhancement, arguing at the time of his federal sentencing Congress had amended the Controlled Substances Act in 2018 to exclude hemp from the definition of marijuana. He argued because the federal Controlled Substances Act at the time of his 2020 federal sentencing defined marijuana more narrowly than the New Jersey law at the time of his 2012 state law conviction, his earlier state conviction did not qualify as a predicate offense under the Guidelines. The United States responded substances regulated by state law are controlled substances under the Guidelines even if not regulated by federal law, so Mr. Lewis's earlier New Jersey conviction counted toward a controlled substance offense and Guidelines enhancement. Judge Wolfson agreed with Mr. Lewis and did not increase his base offense level at sentencing. The United States appealed.

Our Court of Appeals vacated the judgment of sentence. It held the meaning of "controlled substance" in section 4B1.2(b) of the Guidelines "includes drugs regulated *by state law at the time of the predicate state conviction*, even if they are not federally regulated or no longer regulated by the state at the time of the federal sentencing."[75]

Our Court of Appeals explained its reasoning by recognizing the "typical application of the categorical approach" requires us to ask whether the elements of the state crime "match the elements" of the corresponding federal or generic crime.[76] But, as the court explained, the categorical approach did *not* apply to Mr. Lewis's argument because section 4B1.2(b) of the Guidelines defines the term "'controlled substance offense' by reference to certain prohibited conduct, *not by reference to a federal criminal statute* or a 'generic' crime like burglary."[77] The court directed we must instead "determine not whether the prior conviction was for a certain offense, but whether the conviction meets some other criterion."[78]

The "other criterion" used for comparison is the elements of Mr. Lewis's state law conviction for possession with intent to distribute marijuana with the definition of a "controlled substance offense" in section 4B1.2(b) of the Guidelines.[79] Section 4B1.2(b) of the Guidelines defines the term "controlled substance offense" as: (1) "an offense under federal or state law"; (2) "punishable by imprisonment for a term exceeding one year"; which (3) "'prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance,' or possession with the intent to do so."[80]

Our Court of Appeals focused its analysis on whether the New Jersey law underlying Mr. Lewis's conviction categorically "prohibit[ed] … the possession of a ***controlled substance*** … with intent … to distribute;" that is, whether marijuana as defined by New Jersey law at the time of Mr. Lewis's state conviction is a "controlled substance" used in the Guidelines' section 4B1.2(b) definition of "controlled substance offense."[81] Our Court of Appeals held a "controlled substance" within the definition of "controlled substance offense" is one regulated by "***either*** federal or state law."[82] The court rejected reading into section 4B1.2(b) a "federal-law-only" approach defined by the Controlled Substances Act.[83] The court explained the Guidelines do not define "controlled substance offense" by referring to the Controlled Substances Act. The court rejected Mr. Lewis's arguments, concluding a "controlled substance" under section 4B1.2(b) of the Guidelines "is a drug regulated by either state or federal law [and] [i]t is therefore irrelevant that the New Jersey statute under which [Mr.] Lewis was convicted defined 'marijuana' more broadly than federal law."[84]

Our Court of Appeals then determined when the substance must be regulated by state law for a Guideline enhancement to apply.[85] The court asked whether we look at the date of the predicate state conviction or the date of the federal sentencing? In Mr. Lewis's case, New Jersey

removed hemp from its definition of marijuana after his 2012 state conviction but before his 2020 federal sentencing on his felon in possession offense.

Recognizing divided authority in the federal appellate courts, our Court of Appeals concluded the meaning of "controlled substance" as used in section 4B1.2(b)'s definition of "controlled substance offense" includes drugs "regulated by state law at the time of the predicate state conviction, even if they are not federally regulated or no longer regulated at the time of the federal sentencing."[86] Because New Jersey regulated marijuana, including hemp, at the time of Mr. Lewis's predicate state conviction, our Court of Appeals found Judge Wolfson erred in declining to apply the enhancement under the Guidelines.[87]

Our Court of Appeals addressed its decision in *Brown*. The court explained its holding in *Lewis* is not inconsistent with *Brown* which "adopted a time-of-federal ***offense*** approach for determining whether a prior conviction was for a 'serious drug offense' under ACCA."[88] The court distinguished *Brown* as decided within the context of ACCA and "disavowed any connection between" ACCA's categorical analysis and the Guidelines; *Brown* relied heavily on the federal saving statute not at issue in *Lewis*; and the term "serious drug offense" under ACCA is defined as a Controlled Substance Act offense or a state law offense involving a controlled substance as defined by the Controlled Substance Act which the Guidelines do not so define.[89] The Guidelines do ***not*** define a "controlled substance" by explicitly cross-referencing the Controlled Substances Act, making it unlike ACCA enhancement cases.

Following *Lewis*, our colleagues in this Circuit rejected the same argument made by Mr. Scales. For example, Judge Mannion recently denied a defendant's motion to vacate his sentence because his earlier Pennsylvania convictions for cocaine-related offenses under §780-133(a)(30) do not qualify as a controlled substance offense under sections 4B1.1 and 4B1.2.[90] Defendant

Kingsley argued he cannot be designated a career offender under the Guidelines because Pennsylvania defines cocaine more broadly than the federal Controlled Substances Act.[91] Judge Mannion rejected Mr. Kingsley's argument, finding all his earlier Pennsylvania felony convictions for possession with intent to deliver cocaine and methamphetamine count as predicate offenses for determining career offender status under the Guidelines regardless of any variance between Pennsylvania's definition and the federal definition of cocaine and methamphetamine based on our Court of Appeals's decision in *Lewis*.[92]

Chief Judge Brann rejected an ineffective assistance of counsel claim based on an argument his counsel failed to object to the career offender enhancement challenge to the application of a career offender enhancement.[93]Chief Judge Brann rejected defendant's ineffective assistance claim, applying *Lewis*. Chief Judge Brann found Defendant did not suffer prejudice from counsel's failure to object to the career offender enhancement because defendant's two prior Pennsylvania controlled substance convictions (marijuana) made him a career offender under the Guidelines even though federal law excluded hemp from the federal definition of marijuana.[94]

Under *Lewis*, for purposes of the "controlled substances offense" as defined in section 4B1.2 of the Guidelines, the term "controlled substances" includes drugs related by state or federal law at the time of the state conviction even if not federally regulated at the time of federal sentencing.[95] At the time of Mr. Scales's state convictions in 2011, Pennsylvania regulated cocaine. Under *Lewis*, cocaine is a "controlled substance" for purposes of section 4B1.2, making his Pennsylvania convictions "controlled substance offenses" supporting a career offender designation under the Guidelines. *Lewis* forecloses Mr. Scales's challenge to the career offender designation even if we considered it as a writ of *audita querela*.

16

### C. Mr. Scales does not show his attorneys' performance is deficient and prejudiced his defense.

Mr. Scales proceeds under section 2255 by challenging the effectiveness of his trial, sentencing, and appellate counsel. He asserts ineffective assistance by:

- Attorney Hughes: failed to make the categorical match argument for the cocaine offense as applied in *Brown* and *Jackson* affecting the career offender determination; failed to investigate Mr. Scales's prior convictions and, if he had done so, he would have discovered ioflupane is no longer a controlled substance as of 2015;

- Attorney Sturm: failed to make the categorical match argument for the cocaine offense at resentencing affecting the career offender determination; failed to provide him with a *Padilla* warning; failed to investigate Mr. Scales's prior convictions and, if she had done so, she would have discovered ioflupane is no longer a controlled substance as of 2015; and,

- Attorney Tinari: failed to file a suppression motion to exclude evidence tainted by a Fourth Amendment violation and instead moved for a *Franks* hearing, disregarding Mr. Scales's instruction to file a motion to suppress.

Our analysis of the merits of Mr. Scales's challenge to the career offender designation drives our review of his ineffective assistance of counsel claims. Because his claims are meritless, we easily dispose of his ineffective assistance claims.

We evaluate ineffective assistance of counsel claims in violation of the Sixth Amendment under the two-part test of *Strickland v. Washington*: counsel is presumed effective unless Mr. Scales establishes: (1) deficient performance by counsel; and (2) the deficient performance prejudiced the defense.[96] We need not analyze both elements in "the same order or even … address both components of the inquiry if the defendant makes an insufficient showing on one" and we "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."[97]

Under *Strickland's* performance prong, counsel's representation "must fall 'below an objective standard of reasonableness considering all the circumstances.'"[98] Under the prejudice prong, Mr. Scales must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[99] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[100] Mr. Scales fails to meet either prong of *Strickland*.

> **1. Neither Attorney Hughes's nor Attorney Sturm's representation fell below an objective standard of reasonableness.**

Mr. Scales asserts both Attorney Hughes and Attorney Sturm were ineffective because each failed to properly investigate his prior Pennsylvania convictions which would have revealed those convictions did not involve a controlled substance and each failed to challenge his career offender status based Pennsylvania's inclusion of ioflupane in its definition of cocaine which is broader than the definition of cocaine in the federal schedules.

Mr. Scales is simply incorrect. Our Court of Appeals's holding in *Lewis* forecloses his argument. At the time of Mr. Scales's Delaware County cocaine-related convictions in 2011 (in addition to heroin and marijuana convictions), Pennsylvania law regulated cocaine. Under *Lewis*, a "controlled substance" under section 4B1.2(b) of the Guidelines is a drug regulated *either* by *state* or federal law. It not relevant Pennsylvania's statute defined cocaine more broadly than federal law and at the time of Mr. Scales's Pennsylvania convictions in 2011; Pennsylvania law regulated cocaine. End of story. Mr. Scales has a "controlled substance offense" as defined by the Guidelines and within the meaning of the career offender enhancement under section 4B1.1.

"We may address the prejudice prong first '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice.'"[101] Attorneys Hughes and Sturm cannot be found ineffective for failing to raise a meritless argument regarding Mr. Scales's career offender

designation based on Mr. Scales's meritless theory his prior Pennsylvania convictions cannot be predicates for a career offender designation under the Guidelines. Counsel cannot be ineffective for failing to raise a meritless claim.[102] He does not meet the prejudice prong under *Strickland*.

### 2. Attorney Sturm is not ineffective for failing to provide a *Padilla* warning.

Mr. Scales next argues Attorney Sturm never provided him with a warning under *Padilla v. Kentucky*.[103] In *Padilla*, the Supreme Court held counsel must inform her client whether accepting a guilty plea carries a risk of deportation.[104] An attorney's failure to provide such a warning violates the first prong of *Strickland's* ineffective assistance of counsel analysis.[105] *Padilla* applies only to non-citizens pleading guilty.[106] No warning about the risk of deportation needed to be given to Mr. Scales; he is a United States citizen.[107] Mr. Scales's claim of ineffectiveness of Attorney Sturm based on a non-applicable *Padilla* warning is without merit. We dismiss his ineffectiveness claim based on this argument.

### 3. Attorney Tinari's representation in moving to suppress did not fall below an objective standard of reasonableness.

Mr. Scales argues Attorney Tinari did not move to suppress evidence at trial although Mr. Scales asked him to do so. The record tells a different story.

Attorney Tinari moved to suppress on September 9, 2019 seeking to preclude physical evidence, electronic surveillance, and statements Mr. Scales made when federal law enforcement executed a search and seizure warrant taking Mr. Scales into custody.[108] Attorney Tinari objected to evidence obtained in violation of the Fourth Amendment.[109]

We denied the motion after oral argument and an evidentiary hearing.[110] We concluded the police searched Mr. Scales's home after obtaining his consent and police did not seize evidence, agents conducted wiretaps after a federal judge found probable cause to issue a warrant subject to

our review under *United States v. Starks*, and we deferred ruling on suppression of audio recordings and testimony of arresting officers until our review of transcripts.[111]

We later granted in part and denied in part Mr. Scales's motion to suppress supported by a thirty-page memorandum with findings of fact, excluding evidence on a tape recording of statements made by Mr. Scales included in a detective's post-interview notes after Mr. Scales invoked his right to silence.[112]

Attorney Tinari again moved just before trial seeking to suppress statements made by Mr. Scales to a detective without being given a *Miranda* warning.[113] Attorney Tinari simultaneously filed moved for a *Franks* hearing and to suppress evidence illegally seized by law enforcement officials.[114] Attorney Tinari also moved in limine to preclude evidence and argument related to an unidentified cellular telephone assigned to a specific number.[115] We held a hearing on all motions. We denied the motion in limine relating to the cell phone records and the motion for a *Franks* hearing to suppress evidence obtained under a valid search warrant, but granted Mr. Scales's Motion to suppress his statements made at his home before given his *Miranda* warnings.[116]

The record shows Attorney Tinari filed two suppression motions, a motion in limine, and a motion for a *Franks* hearing and we granted some of his motions, excluding certain evidence. Attorney Tinari's performance did not below an objective standard. We deny Mr. Scales's ineffective assistance claim.

### D.  We find no basis for an evidentiary hearing.

Mr. Scales requests an evidentiary hearing on Attorney Tinari's failure to file a suppression motion. Congress in section 2255(b) requires us to hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief …"[117]

To determine whether a hearing is necessary, we are directed by our Court of Appeals to apply a two-pronged inquiry: (1) we must "consider[ ] as true all appellant's nonfrivolous factual claims"; and (2) we must "determine whether, on the existing record, those claims that are nonfrivolous conclusively fail to show ineffective assistance of counsel."[118] The second prong is evaluated under *Strickland*, requiring Mr. Scales to show deficiency of his counsel's performance and prejudice to his defense.[119]

The standard for obtaining a hearing on a section 2255 motion is "less onerous" than the standard a movant must meet to prevail on an ineffective assistance of counsel claim.[120] Mr. Scales need not "prove" anything to warrant a hearing; he needs only to "allege a set of facts that is not frivolous or clearly contradicted by the record and that demonstrates (if assumed to be true) that he would plausibly be entitled to relief under *Strickland*."[121] For example, where resolution of a section 2255 motion "turns on credibility or disputed facts" or "the record is inconclusive about whether a movant is entitled to relief," a  hearing is warranted.[122] This is a "reasonably low threshold for habeas petitioners to meet."[123]

But Mr. Scales fails to meet even this low threshold. He does not have "nonfrivolous claims." His claims of ineffective assistance by Attorneys Hughes and Sturm are without merit: our Court of Appeals rejected Mr. Scales's argument under *Nasir* in his second appeal, explaining his drug convictions under section 780-113(30) does ***not*** criminalize any inchoate offenses and the statute remains, even after *Nasir*, a career offender predicate; *Lewis* forecloses Mr. Scales's challenge to his career offender designation; and the warning required by *Padilla* does not apply to United States citizens like Mr. Scales. Mr. Scales's claims of ineffective assistance of trial counsel Attorney Tinari are contradicted by the record which shows Attorney Tinari filed two suppression motions, a motion in limine, and a motion for a *Franks* hearing.

Mr. Scales's *Strickland* claims fails as a matter of law and are contradicted by the record which conclusively shows he is not entitled to relief. We need not hold an evidentiary hearing.

### E.  We decline to issue a certificate of appealability.

Congress in section 2253(c)(1)(B) provides "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under section 2255."[124] We may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."[125] A petitioner meets this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."[126]

Mr. Scales fails to meet this standard. We decline to issue a certificate of appealability.[127] Reasonable jurists could not disagree with our conclusion Mr. Scales's constitutional claims are frivolous and not supported by the record.

## III.  Conclusion

We deny Mr. Scales's petition for writ of *audita querela* and section 2255 habeas petition. No evidentiary hearing is required on the habeas petition because the record conclusively shows he is not entitled to relief. Mr. Scales failed to make a substantial showing of the denial of a constitutional right or show jurists of reason could disagree with our conclusion, thus, there is no basis to issue a certificate of appealability.

---

[1] Presentence Investigative Report ("PSR") ¶¶ 49, 50.

[2] Our grand jury charged Mr. Scales with violating 21 U.S.C. § 846 (Count I) and 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (Count VII). *See* Second Superseding Indictment. ECF No. 185.

[3] 21 U.S.C. § 802(57); ECF No. 245.

[4] ECF No. 262.

[5] ECF No. 261.

[6] ECF No. 276.

[7] ECF No. 279.

[8] ECF No. 287.

[9] ECF No. 292.

[10] ECF No. 294.

[11] ECF No. 296.

[12] ECF No. 362.

[13] *Id.*

[14] ECF Nos. 368, 369.

[15] *Id.*

[16] ECF No. 415, ECF No. 435 (sentencing transcript).

[17] PSR ¶¶ 37–45, 51–54.

[18] ECF No. 416.

[19] 982 F.3d 144 (3d Cir. 2020) (en banc), *abrogated on other grounds by Greer v. United States*, 593 U.S. 503 (2021). The Supreme Court remanded *Nasir* to our Court of Appeals for further consideration based on the Court's decision in *Greer*. On remand, our Court of Appeals held inchoate crimes are not included in the definition of "controlled substance offenses" in section 4B1.2(b) of the Guidelines. *United States v. Nasir*, 17 F.4th 459 (3d Cir. 2021) ("*Nasir II*").

[20] *United States v. Scales*, No. 20-2678, 2021 WL 3854765 (3d Cir. Aug. 30, 2021).

[21] ECF No. 462.

[22] PSR ¶¶ 49, 50.

[23] ECF No. 457.

[24] ECF No. 475.

---

[25] November 2021 PSR ¶¶ 37–45.

[26] *Id.* PSR ¶ 37.

[27] *Id.* PSR ¶¶ 37–45.

[28] *Id.* PSR ¶ 51.

[29] *Id.* PSR ¶¶ 52–53.

[30] *Id.* PSR ¶¶ 53–54.

[31] *Id.* PSR ¶ 96.

[32] ECF No. 456.

[33] ECF No. 459.

[34] ECF Nos. 462, 463.

[35] *United States v. Scales*, No. 21-3212, 2022 WL 16734496 (3d Cir. Nov. 7, 2022).

[36] *Id.* at *1.

[37] *Id.*

[38] *Id.*

[39] *Id.* (citing 35 PA. STAT. & CONS. STAT. § 780-113(a)(30)). Section 780-113(a)(30) of Pennsylvania's statute prohibits: "[t]he manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance."

[40] *Id.* (quoting *United States v. Dawson*, 32 F.4th 254, 258–67 (3d Cir. 2022)).

[41] *Id.* at *1.

[42] *Id.* at *2. The court also noted there is no evidence the methamphetamine is fake or non-consumable. *Id.*

[43] *Id.*

[44] *Scales v. United States*, 143 S.Ct. 1011, 215 L.Ed.2d 142 (2023).

[45] ECF No. 493.

[46] ECF No. 495.

[47] *See United States v. Folk*, 954 F.3d 597 (3d Cir. 2020).

[48] 28 U.S.C. § 1651. The All Writs Act provides: "(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law. (b) An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction." *Id.*

[49] *In re Perri*, No. 22-2994, 2022 WL 17090173, at *1 (3d Cir. 2022) (quoting *Massey v. United States*, 581 F.3d 172, 174 (3d Cir. 2009)).

[50] *United States v. Gonzalez-Rivera*, 535 F. App'x 95, 96 (3d Cir. 2013).

[51] *United States v. Potts*, 765 F. App'x 638, 640 (3d Cir. 2019).

[52] *Id. See also United States v. Georgiou*, 800 F. App'x 136, 138–39 (3d Cir. 2020) (affirming district court's denial of defendant's motion for *audita querela* to vacate a final forfeiture order against him because defendant failed to identify a gap in the post-conviction relief system and could have challenged the orders on direct appeal).

[53] *Scales*, 2022 WL 16734496 at *2.

[54] U.S.S.G. § 4B1.1(a).

[55] *Id.* § 4B.1.(b).

[56] *Nasir II*, 17 F.4th at 468–69.

[57] *Id.* at 472.

[58] *Scales II*, 2022 WL 16734496 at *1 (explaining it held in *Dawson* Pennsylvania statute §780-113(30) "does not criminalize any inchoate offenses.").

[59] *United States v. Brown*, 47 F.4th 147 (3d Cir. 2022), *cert. granted*, *Brown v. United States*, 143 S.Ct. 2458, 216 L.Ed.2d 430 (2023); *United States v. Jackson*, 36 F.4th 1294 (11th Cir. 2022), *abrogated by* 55 F.4th 846 (11th Cir. 2022), *cert. granted*, *Jackson v. United States*, 143 S.Ct. 2457, 216 L.Ed.2d 430 (2023).

[60] The Court consolidated *Brown* and *Jackson* for briefing and oral argument. The Court held argument on November 27, 2023 but has not yet issued its decision.

[61] We separately address the ineffective counsel claims under *Strickland*.

[62] *Brown*, 47 F.4th at 148–49.

[63] *Id.* at 149.

[64] *Id.*

[65] *Id.* at 150. Congress amended the Agricultural Improvement Act in 2018 to remove hemp from the definition of marijuana.

[66] *Id.*

[67] *Id.* at 149–51.

[68] *Id.* at 151–56.

[69] *Id.* at 153–56.

[70] *Id.* at 155–56. Our Court of Appeals decided *Brown* on June 17, 2022, finding persuasive the decision of the United States Court of Appeals for the Eleventh Circuit in *United States v. Jackson* one week earlier on June 10, 2022. The court of appeals in *Jackson* similarly held the version of the Controlled Substance Act Schedules in place when Mr. Jackson committed his federal firearm possession offense applied. *Jackson*, 36 F.4th at 1297. Mr. Jackson pleaded guilty in 2017 to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). At the time of his 2017 conviction, he had five qualifying predicate convictions in Florida to support an ACCA enhancement, including a 1998 conviction for the sale of cocaine and a 2004 conviction with possession with the intent to sell cocaine. *Id.* at 1298. Mr. Jackson conceded his armed robbery and aggravated battery convictions qualified as ACCA predicates, but argued neither of his cocaine-related convictions qualified as a third ACCA predicate. He argued the United States removed from the Controlled Substances Act Schedule the drug ioflupane in 2015, a substance derived from cocaine via ecgonine (both Schedule II controlled substances), while Florida's statute included ioflupane as a controlled substance. Mr. Jackson argued because Florida's statute is broader for cocaine-related offenses than ACCA's serious drug offense definition, his Florida cocaine-related convictions do not qualify as a serious drug offense for ACCA's enhancement. This is so even though at the time of Mr. Jackson's Florida state court cocaine-related convictions in 1998 and 2004, both state and federal controlled substances schedules categorically matched. The Court of Appeals agreed with Mr. Jackson, holding at the time of Mr. Jackson's 2017 felon-in-possession conviction, the federal controlled substances schedule excluded ioflupane and did not qualify under ACCA as a "serious drug offense." *Id.* at 1304. The *Jackson* decision seemingly supports *Brown*. But the Court of Appeals for the Eleventh Circuit superseded its June 2022 *Jackson* decision six months later on December 13, 2022. 55 F.4th 846 (11th Cir. 2022). In its new reasoning, the Court of Appeals applied a "backward-looking" perspective to the ACCA's definition of "serious drug offense." *Id.* at 859-61. It held Florida's definition of "serious drug offense" incorporated the federal drug schedules in effect at the time of the prior state drug conviction. *Id.* At the time of Mr. Jackson's state law convictions on drug offenses in 1998 and 2004, the federal schedules included ioflupane and qualified as "serious drug offense[s]" under ACCA. *Id.* at 861–62. The court held the version of the federal drug schedules in effect at the time of Mr. Jackson's conviction on his prior state drug offenses applied and, because the state and

federal schedules included ioflupane as a controlled substance in 1998 and 2004, the statutes categorically matched. *Id.* at 861. *Jackson II* does not support Mr. Scales's argument.

[71] 80 Fed. Reg. 54715, 21 C.F.R. Part 1308. Ioflupane 123I is a radiopharmaceutical used by medical professionals in tomography scans to diagnose Parkinson's disease. *See* https://www.mayoclinic.org/drugs-supplements/ioflupane-i-123-intravenous-route/description/drg-20074736.

[72] Mr. Scales's 2011 Pennsylvania convictions involved cocaine base (crack), heroin, and marijuana.

[73] 58 F.4th 764 (3d Cir. 2023).

[74] *Lewis*, 58 F.4th at 766.

[75] *Id.* at 773 (emphasis added).

[76] *Id.* at 767–68.

[77] *Id.* at 768 (emphasis added) (citing *Shular v. United States*, 589 U.S. 154, 157–58 (2020)).

[78] *Id.* (quoting *Shular*, 589 U.S. at 158).

[79] *Id.*

[80] *Id.* (quoting U.S.S.G. § 4B1.2(b)). Mr. Lewis did not dispute his prior New Jersey conviction for possession with intent to distribute marijuana is an offense under state law punishable by a term exceeding one year.

[81] *Id.* (emphasis in original).

[82] *Id.* at 769 (emphasis in original).

[83] *Id.*

[84] *Id.* at 771.

[85] *Id.* In Mr. Lewis's case, a section 2K2.1(a)(4)(A) enhancement applied (unlawful receipt, possession, or transportation of firearms or ammunition; prohibited transactions involving firearms or ammunition). U.S.S.G. § 2K2.1.

[86] *Lewis*, 58 F.4th at 773.

[87] *Id.*

[88] *Id.* (emphasis in original).

[89] *Id.*

[90] *United States v. Kingsley*, No. 21-130, 2024 WL 843917 (M.D. Pa. Feb. 28, 2024).

[91] *Id.* at *3.

[92] *Id.* at *3–*4. Judge Mannion rejected other challenges to the career offender enhancement under the Guidelines based on the argument a state law conviction is broader than a federal definition based on *Lewis*. *See United States v. Carey*, No. 18-37, 2023 WL 8702144, at *4–*5 (M.D. Pa. Dec. 15, 2023) (rejecting defendant's ineffective assistance of counsel claim based on an argument New Jersey's law includes ioflupane under its definition of cocaine while federal law excludes it can not be counted in a career offender designation as foreclosed by *Lewis*); *United States v. Cook*, No. 16-312, 2023 WL 4278673, at *4 (M.D. Pa. June 29, 2023) (overruling defendant's objection to the PSR's career offender designation based on two prior Pennsylvania state convictions for cocaine-related offenses as "controlled substance offenses" under the Guidelines); *United States v. Jackson*, No. 20-291, 2023 WL 2816853, at *5 (M.D. Pa. Apr. 6, 2023) (overruling defendant's objection to the PSR's career offender designation based on New Jersey convictions on cocaine-related offenses including ioflupane as sweeping more broadly than the federal definition).

[93] *United States v. Ly*, No. 19-11, 2023 WL 3513674 (M.D. Pa. May 17, 2023).

[94] *Id.* at *6–*7.

[95] *Lewis*, 58 F.4th at 773.

[96] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[97] *Id.* at 697.

[98] *McKernan v. Superintendent Smithfield SCI*, 849 F.3d 557, 564 (3d Cir. 2017) (quoting *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005)).

[99] *Strickland*, 466 U.S. at 694.

[100] *United States v. Arrington*, 13 F.4th 331, 335 (3d Cir. 2021) (quoting *Strickland*, 466 U.S. at 694).

[101] *U.S. v. Travillion*, 759 F.3d 281, 289 (3d Cir. 2014) (quoting *Strickland*, 466 U.S. at 697).

[102] *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000).

[103] 559 U.S. 356 (2010).

[104] *Id.* at 373–75.

[105] *Id.* at 369.

[106] *Singh v. Att'y Gen. of United States*, 12 F.4th 262, 278, n. 15 (citing *Padilla*, 559 U.S. at 364).

[107] PSR at 3.

[108] ECF No. 130.

[109] *Id.* at § V.

[110] ECF No. 144.

[111] *Id.* Under our Court of Appeals's decision in *United States v. Starks*, we must hold an evidentiary hearing where a challenge is made to the admissibility of recordings. 515 F.2d 112 (3d Cir. 1975).

[112] ECF Nos. 151, 152.

[113] ECF No. 202.

[114] ECF No. 203. In *Franks v. Delaware*, the Supreme Court held a criminal defendant has the right to challenge the truthfulness of factual statements made in an affidavit of probable cause supporting a warrant. 438 U.S. 154 (1978). The Court held "where a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Id.* at 155–56.

[115] ECF No. 204.

[116] ECF Nos. 238, 239.

[117] *Arrington*, 13 F.4th at 334 (quoting 28 U.S.C. § 2255(b)).

[118] *Id.* (quoting *United States v. Dawson*, 857 F.2d 923, 927–28 (3d Cir. 1988)).

[119] *Id.* (citing *Strickland*, 466 U.S. at 687).

[120] *Id.* at 335.

[121] *Id.* (citing *Dawson*, 857 F.2d at 927–28).

[122] *Id.* (citing *United States v. Tolliver*, 800 F.3d 138, 142–43 (3d Cir. 2015)).

[123] *Id.* at 334 (quoting *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005)).

---

[124] 28 U.S.C. § 2253(c)(1)(B).

[125] *Id.* § 2253(c)(2).

[126] *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (cleaned up); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (to satisfy section 2253(c), the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.").

[127] We are aware a certificate of appealability is not required to appeal the denial of a writ of *audita querela*. *See Potts*, 765 F. App'x at 640 (certificate of appealability not required to appeal a denial of a writ of *audita querela* and summarily affirming denial of defendant's motion for relief under the All Writs Act and common law writ of *audita querela*) (citing *United States v. Baptiste*, 223 F.3d 188, 189, n. 1 (3d Cir. 2000)).